2001 UT 4

STATE of Utah, Plaintiff and Appellee,

v.

Brien L. HOFFHINE, Defendant and Appellant.

No. 981827.

Supreme Court of Utah.

Jan. 23, 2001.

Mark Shurtleff, Att'y Gen., Joanne C. Slotnik, Asst. Att'y Gen., Salt Lake City, for plaintiff.

Kevin J. Kurumada, Salt Lake City, for defendant.

WILKINS, Justice:

¶ 1 A jury convicted Brien L. Hoffhine of aggravated robbery, a first degree felony, in violation of Utah Code Ann. § 76-6-302 (1997). Defendant appeals his conviction, claiming that the trial court erred in (1) admitting the underlying facts of a showup identification; (2) denying defendant's motion for arrest of judgment; and (3) denying defendant's motion for a new trial. We affirm.

## BACKGROUND[1]

¶ 2 On January 3, 1998, at about nine o'clock p.m., Kiril Boyadjieff was riding his bicycle when a white Cadillac with its lights off pulled up behind him, hit his bicycle, and knocked him to the ground. The Cadillac then pulled in front of Boyadjieff, and defendant hopped out of the passenger side of the vehicle. As defendant got out of the car, he asked Boyadjieff "How much money have you got?" Boyadjieff did not comprehend what defendant was asking and replied, "What?" Defendant then started walking towards Boyadjieff, pulled out a gun, and cocked it. When defendant was approximately three and one-half feet away from Boyadjieff, he pointed the gun at Boyadjieff's head and repeated his question. Boyadjieff

then realized what was occurring, pulled out his wallet, and handed it to defendant.

¶ 3 As defendant was looking through Boyadjieff's wallet, Boyadjieff stood up. At the same time, a van pulled over and parked on the opposite side of the street. The driver of the van had seen the Cadillac with its lights off and stopped to ask if anyone needed help. Defendant then tossed the wallet back to Boyadjieff and walked back to the car. As soon as defendant got into the passenger side, the Cadillac immediately drove away. As the car drove off, Boyadjieff saw the license plate of the Cadillac, which was B–L–A–K–J–A–K. The incident lasted approximately twenty to thirty seconds.

¶ 4 After the Cadillac pulled away, Boyadjieff went over to the van and told the driver that he'd just been robbed at gunpoint. Boyadjieff gave the driver the Cadillac's license plate information and she wrote it down.

¶ 5 At approximately 9:10 p.m., when Boyadjieff arrived at home, he called the police. Sometime between 9:20 and 9:30 p.m., Officer Thomas Wind from the Salt Lake City Police Department arrived at Boyadjieff's home. Boyadjieff told Officer Wind about the robbery and described the car: a white, early '80s model, two-door Cadillac with tinted windows, and a Utah license plate that read "B–L–A–K–J–A–K." Boyadjieff described the robber as being a Caucasian male, fifteen to sixteen years old, slightly shorter than Boyadjieff's own height of six feet two inches and around or slightly less than his weight of 155 pounds. He also described the robber's face as "longer shaped." Boyadjieff told Officer Wind that the assailant had on dark baggy pants, a shirt or jacket that was possibly striped, and he was wearing a bandanna or hat on his head.

¶ 6 Officer Wind alerted other law enforcement officers. About ninety minutes after the robbery, Officer Wind called Boyadjieff, explained that the police had stopped a vehicle with suspects, and asked Boyadjieff if he would go with him to look at the suspects.

---

1. We recite the facts from the record "in the light most favorable to the jury's verdict." *State v. Litherland*, 2000 UT 76, ¶ 2, 12 P.3d 92.

¶ 7 Officer Wind took Boyadjieff to where the vehicle had been stopped. Boyadjieff remained with Officer Wind in his car while another officer presented the suspects to Boyadjieff, about ten to fifteen feet away from Officer Wind's car, with the car's spotlights shining on them. The officer brought out the first suspect and Boyadjieff told Officer Wind, "I haven't seen that person." When the officer brought out the second suspect, Boyadjieff identified him as the robber. Officer Wind asked Boyadjieff how sure he was about the identification and Boyadjieff said he was a "nine and a half" on a ten point scale.

¶ 8 At the police station later that night, defendant waived his Miranda rights and agreed to talk to Officer Wind and the patrol sergeant. During the interview, defendant told the officers that Thomas Powell, the owner of the Cadillac, came over to defendant's house earlier in the evening to pick him up. Defendant said that he and Powell went to Fashion Place Mall and Taco Bell and then to Powell's house. Defendant claimed that they were on their way to "get some girls" when the police stopped them. Defendant said that he did not have anything to do with the robbery.

¶ 9 Defendant was charged with aggravated robbery. At the preliminary hearing, Boyadjieff testified that he had positively identified defendant as the robber at the showup identification on the night of the robbery. However, he said that as he was testifying he was not sure that defendant was in fact the robber. Boyadjieff stated that he identified defendant on the night of the robbery because defendant "looked a lot more like the person I saw" than the first suspect brought out. Boyadjieff also said, "The best I can guarantee is the identification of the car."

¶ 10 Before trial, defendant filed a motion to suppress the eyewitness identification, claiming that the identification procedure was unreliable and unduly suggestive. The trial court granted the motion but ruled that Boyadjieff would be allowed to testify about the facts and circumstances surrounding the showup identification.

¶ 11 At trial, the jury convicted defendant. A few weeks after the trial, Boyadjieff filed a victim's affidavit with defense counsel, claiming that he was now certain that defendant was not the person who robbed him. With this affidavit, defendant moved the trial court to arrest judgment, or in the alternative, grant a new trial. Following a hearing, the trial court denied both motions.

¶ 12 On appeal, defendant claims that the trial court erred in (1) admitting into evidence the underlying facts of the showup identification; (2) denying defendant's motion for arrest of judgment for insufficient evidence; and (3) denying defendant's motion for a new trial based on the victim's post-trial statement that defendant was not the robber.

## ANALYSIS

### I. SHOWUP IDENTIFICATION

¶ 13 Prior to trial, defendant moved to suppress the eyewitness identification. The trial court, in determining whether evidence about the showup should be allowed, analyzed the circumstances of the showup identification under the factors this court set forth in *State v. Long*, 721 P.2d 483 (Utah 1986), and *State v. Ramirez*, 817 P.2d 774 (Utah 1991)[2]. Based on the facts presented, the trial court concluded that the "process of attempting to elicit an identification was suggestive and yet resulted in a non-identification of the defendant." As a result, the trial court ruled that the State could not introduce evidence referring to the showup as an "eyewitness identification," nor could any of the police officers testify that the victim had positively identified defendant as the robber. However, the trial court also ruled that "[a] reference to the facts and to the witness's description of the individual that he saw is not precluded," and "[a] description of the person that he later saw at the vehicle is not precluded." The trial court specifically said that Boyadjieff could "testify to everything that occurred, including to the fact that he was taken to a certain location where two individuals were shown to him and he was asked to make an identification."

2. *See* ¶ 19 *infra*.

¶ 14 On appeal, defendant argues that the trial court erred in only partially suppressing the eyewitness identification. The State counters that any error was invited because defense counsel indicated, at a hearing after the trial court ruled, that defendant was concerned about Officer Wind testifying that Boyadjieff identified defendant at the showup, but defendant was *not* concerned about any testimony Boyadjieff might give about the showup. We reject the State's contention. Defense counsel's statements made in this case *after* the trial court had denied defendant's motion to suppress do not constitute invited error. We will not require a party to continue to object once a motion has been made, and the trial court has rendered a decision on the issue.

¶ 15 We next address the merits of defendant's argument. As defendant points out, the trial court examined the facts surrounding the showup identification under the *Ramirez* factors to determine whether the showup identification was constitutionally reliable and could be admitted into evidence. The trial court's conclusions of law indicate that the court would have suppressed the showup entirely but for the fact that the court found that the showup resulted in a "non-identification."

■ ¶ 16 The purpose of analyzing the facts under the *Ramirez* test is for the trial court to determine, as a threshold matter, whether the identification is constitutionally reliable and thus, whether it can properly be admitted into evidence. In this case, the trial court seemed to conclude that the showup did not meet the *Ramirez* standard. It granted the motion to suppress and prohibited the officers from testifying that the victim positively identified defendant. Despite this ruling, the court admitted testimony from the victim regarding the showup because the court found that the showup "resulted in a non-identification of the defendant." However, this court has specifically rejected the "level of certainty demonstrated by the witness at the confrontation" as a factor to be used in determining the constitutional reliability of an identification. *See Ramirez*, 817 P.2d at 781; *Long*, 721 P.2d at 490. Therefore, even though the showup "resulted in a non-identification," it was erroneous for the trial court to admit evidence of the showup procedure after granting the motion to suppress and concluding that the showup was suggestive and did not satisfy the *Ramirez* factors for constitutional reliability.

■ ¶ 17 Although allowing the victim to testify about the underlying facts of the showup was erroneous under the trial court's legal conclusions, we hold that this error was harmless. As explained below, based on the facts found by the trial court, the showup identification could have been admitted in its entirety.

■ ¶ 18 The five factors to be used in determining the due process reliability of eyewitness identifications are:

(1) The opportunity of the witness to view the actor during the event; (2) the witness's degree of attention to the actor at the time of the event; (3) the witness's capacity to observe the event, including his or her physical and mental acuity; (4) whether the witness's identification was made spontaneously and remained consistent thereafter, or whether it was the product of suggestion; and (5) the nature of the event being observed and the likelihood that the witness would perceive, remember and relate it correctly.

*Ramirez*, 817 P.2d at 781 (quoting *Long*, 721 P.2d at 493). We can apply these factors to the showup identification, relying on the trial court's findings of fact. With regard to the first factor, the opportunity of the victim to see the actor, the trial court found that "[t]he victim testified that it was dark, that he had difficulty seeing the criminal actor and the incident happened very quickly." As to the second factor, the witness's degree of attention, the trial court found that the victim was able "to describe the height and age of the individual who took his money at gun point" and "[t]he individual was described as young, fifteen or sixteen and shorter than six feet two inches (the victim's height)." The third factor is the victim's capacity to observe the robber. Here, the trial court said that there was "no evidence ... to suggest the witness's capacity was impaired by stress or fright, personal motivations, biases or prejudices or

that the victim had uncorrected visual defects, suffered from fatigue or injury or was under the influence of drugs or alcohol." In regard to the fourth factor, whether the witness's identification was made spontaneously and remained consistent or whether it was the product of suggestion, the trial court found that the victim was shown two people in a spotlight about an hour and one-half after the robbery, and "Mr. Boyadjieff definitely ruled out Mr. Powell, and said, among other things, the defendant looks 'a lot more like the person I saw than the other individual.'"[3]

¶ 19 Although a close question, under *Ramirez*, this analysis should have led the trial court to conclude that the showup identification met the threshold test for constitutional reliability and all evidence of the showup could have been admitted. As a result, the trial court's ruling partially suppressing the showup identification was harmless error.

## II. MOTION FOR ARREST OF JUDGMENT

¶ 20 Defendant appeals the trial court's denial of his motion for arrest of judgment, arguing that the trial court should have arrested judgment for insufficient evidence. The standard for determining whether a trial court correctly granted or denied a motion for arrest of judgment is the same standard appellate courts apply in determining whether a jury verdict should be set aside for insufficient evidence. *See State v. Workman*, 852 P.2d 981, 984 (Utah 1993). Under that standard, "a trial court may arrest a jury verdict when the evidence, viewed in the light most favorable to the verdict, is so inconclusive or so inherently improbable as to an element of the crime that reasonable minds must have entertained a reasonable doubt as to that element." *Id.*

¶ 21 The evidence here was sufficient. Within an hour and one-half of the robbery, police stopped a car matching the victim's description. Defendant was the only passenger in that car. The victim told police that the robber brandished a gun, and police

found lead pellets from a pellet gun in the front passenger seat of the car. The victim also told police that the robber was wearing a button-up shirt or a jacket over a tee shirt and a bandana or hat on his head. Defendant had a bandana in one of his pockets at the time he was arrested, and the police found a denim jacket on the floor behind the passenger's side of the Cadillac. At a showup an hour and one-half after the robbery, the victim identified defendant, telling police that he was "a nine and a half" on a ten point scale in terms of his certainty of the identification.

¶ 22 In contrast, there is little evidence that could undermine our confidence in the verdict. First, in describing the robber to Officer Wind, Boyadjieff stated that the robber was approximately his own height, which was six feet two inches, and defendant was six feet five inches. Additionally, police did not find the gun used or the money taken in the robbery on defendant or in the car. Finally, defendant offered as alibi evidence the testimony of his brother's girlfriend, who testified that defendant did not leave the house until 9:45 p.m., approximately forty-five minutes after the robbery took place. She said that she was with defendant the entire day, listening to music, playing Nintendo, and watching television. However, she could not provide any information about what food they ate or what clothes they were wearing. Furthermore, when defendant was interviewed by police after the showup that night, he gave no indication that he spent the day with her.

¶ 23 On appeal we will not reweigh the evidence or disturb the jury's verdict unless the evidence is so inconclusive or inherently improbable that reasonable minds must have entertained a reasonable doubt as to an element of the crime. Defendant has not shown that the evidence in this case is so lacking as to meet this standard. We therefore affirm the trial court's denial of defendant's motion for arrest of judgment.

---

**3.** At trial, Boyadjieff testified that he was "pretty positive" that defendant was the robber *at the time* of the showup, telling Officer Wind that he was "a nine and a half" on a ten point scale, in terms of the degree of his certainty.

## III. MOTION FOR A NEW TRIAL

¶ 24 Subsequent to trial, Boyadjieff prepared a "Victim/Witness Complaint Form," in which he said that he was now "absolutely positive" that defendant was not the person who robbed him. Boyadjieff prepared this statement a week or two after defendant's brother called to inform Boyadjieff of defendant's conviction. Defendant claimed that this form was newly discovered evidence and filed a motion for a new trial. The trial court denied the motion.

¶ 25 In *State v. James*, 819 P.2d 781, 793 (Utah 1991), we said that newly discovered evidence must meet three criteria for a motion for a new trial to be granted. " '(1) It must be such as could not with reasonable diligence have been discovered and produced at the trial; (2) it must not be merely cumulative; (3) it must be such as to render a different result probable on the retrial of the case.' " *Id.* (quoting *State v. Gellatly*, 22 Utah 2d 149, 153, 449 P.2d 993, 996 (Utah 1969)). We also explained in *James* that a trial court's decision to deny a motion for a new trial is reviewed under an abuse of discretion standard and "[w]e assume that the trial court exercised proper discretion unless the record clearly shows the contrary." *Id.*

¶ 26 The trial court held a hearing on defendant's motion for a new trial. During the hearing, the court asked Boyadjieff if he ever told the prosecutor that he was absolutely positive that defendant was not the perpetrator. Boyadjieff answered no. The court asked Boyadjieff whether he knew that there was a difference between saying "I don't know if that's the man and saying I am absolutely positive that it isn't." Boyadjieff said he did. The trial court then asked Boyadjieff to look at defendant and tell the court if he was "positive that this was not the face of the person." Boyadjieff replied that he was not absolutely positive. Later in the hearing, Boyadjieff also expressed feelings of guilt about defendant's conviction and said he "picked [defendant] out because he looked more similar than the other person."

¶ 27 The trial court applied the three-part test for newly discovered evidence to Boyadjieff's statements in the Victim/Witness Complaint Form and his testimony at the hearing. The trial court determined that the third prong of the test, whether the evidence was such as to render a different result probable on retrial, was not met because Boyadjieff's recantation lacked credibility. The trial court made this determination based on the fact that Boyadjieff was influenced by the telephone call from defendant's brother and the fact that Boyadjieff felt responsible for defendant's conviction and felt guilty about sending "a sixteen, seventeen-year-old kid to prison."

¶ 28 In *State v. Loose*, 2000 UT 11, ¶ 18, 994 P.2d 1237, this court held that the trial court should consider both "the substance of the proffered testimony" and the "testimony's probable weight" in determining whether new evidence would " 'make a different result probable on retrial.' " *Id.* Applying our holding in *Loose* to this case, we conclude that the trial court did not exceed the permitted range of discretion in finding that the third prong of the newly discovered evidence test was not met. The substance of Boyadjieff's statements in the Victim/Witness Complaint Form was that he was positive that defendant was not the robber. However, at the hearing on defendant's motion for a new trial, Boyadjieff retreated from these statements, explaining that what he meant by his statements in the form was that he was not sure about whether or not defendant was the robber. Taking this into consideration, along with the finding that Boyadjieff's recantation was not credible, the trial court was within the range of permitted discretion in concluding that the newly discovered evidence test was not satisfied because a different result was not probable on retrial.[4]

## CONCLUSION

¶ 29 The trial court's ruling partially suppressing the showup identification and permitting testimony regarding the showup constitutes harmless error. The trial court properly denied defendant's motion to arrest

---

4. Moreover, the record clearly discloses that Boyadjieff's uncertainty about his assailant's identity was adequately presented to the jury in the course of the trial.

judgment because the evidence offered against defendant was sufficient and was not so inconclusive or inherently improbable as to an element of the crime that reasonable minds must have entertained a reasonable doubt as to that element. Finally, the trial court did not exceed the range of permitted discretion in denying defendant's motion for new trial because defendant did not satisfy the newly discovered evidence test. Defendant's conviction is therefore affirmed.

¶ 30 HOWE, C.J., RUSSON, A.C.J., DURHAM and DURRANT, JJ., concur in WILKINS', J., opinion.