2002 UT 61

**Larry JULIAN, Plaintiff, Appellee, and Cross–Appellant,**

v.

**STATE of Utah, Defendant, Appellant, and Cross–Appellee.**

No. 20000601.

Supreme Court of Utah.

July 2, 2002.

J. Thomas Bowen, Jennifer Gowans, Midvale, for plaintiff.

Mark L. Shurtleff, Att'y Gen., Erin Riley, Asst. Att'y Gen., Salt Lake City, for defendant.

HOWE, Justice:

## INTRODUCTION

¶ 1 The State appeals from a judgment of the district court granting post-conviction relief to appellee Larry Julian on the ground of newly discovered evidence.

## BACKGROUND

¶ 2 In 1987, a jury convicted Julian of two counts of aggravated sexual abuse of a child, in violation of Utah Code Ann. § 76–5–403.1 (1978 & Supp.1985), for acts of sodomy committed on his daughters, A, age eight, and N, age ten. The evidence against Julian consisted entirely of (1) the young girls' testimonies, (2) statements that they had made to third persons, (3) expert medical testimony stating that N showed no signs of sexual abuse and that A exhibited scarring on her vaginal opening that could have been caused either by sexual abuse or by other non-abuse events such as masturbation, and (4) expert medical testimony that traces of blood on A's underclothes also could have been caused by sexual abuse or non-abuse events. The trial court sentenced Julian to two concurrent prison terms of fifteen years to life. We affirmed the convictions on direct appeal. *See State v. Julian,* 771 P.2d 1061 (Utah 1989) (*Julian I* ).

¶ 3 In December 1995, Julian challenged his convictions in a petition for post-conviction relief filed pursuant to rule 65B of the Utah Rules of Civil Procedure (1995). After discovery and a hearing, the trial court (the habeas court) vacated the conviction, ruling that the court at Julian's trial had committed plain error by failing to make reliability findings under Utah Code Ann. § 76–5–411 regarding testimony concerning his daughters' out-of-court statements and that there was a reasonable probability that the outcome of the trial would have been different because such findings would have been made in favor of Julian. The State appealed, and we reversed and remanded, directing the habeas court to make specific findings regarding the admissibility of the children's out-of-court statements under alternative exceptions to the hearsay rule. *See Julian v. State,* 966 P.2d 249 (Utah 1998) (*Julian II* ).

¶ 4 In 1996, while *Julian II* was pending, the Utah Legislature enacted the Post–Conviction Remedies Act (PCRA), codified at Utah Code Ann. §§ 78–35a–101 to—110 (1996). The PCRA replaced prior post-conviction remedies with a statutory, "substantive legal remedy for any person who chal-

lenges a conviction or sentence for a criminal offense and who has exhausted all other legal remedies." *Id.* § 78–35a–102. Also, while *Julian 2* was pending, Julian learned for the first time that A had recanted her trial testimony, admitting in 1994, in conversations with her ecclesiastical advisor and her foster father, that she had lied at Julian's original trial. Relying on this new evidence, Julian filed an amended petition of post-conviction relief under rule 65C of the Utah Rules of Civil Procedure.

¶ 5 On October 28, 1999, the habeas court entered a memorandum decision wherein it concluded that almost all of the children's out-of-court statements were admissible as prior consistent statements under rule 801(d)(1)(b) of the Utah Rules of Evidence. The court further concluded that statements the children made to a physician and clinical social worker were admissible under rules 803(4) and 702 of the Utah Rules of Evidence. Finally, the court concluded that Julian's trial counsel had not been ineffective.

¶ 6 In early 2000, the habeas court held an evidentiary hearing on the issue of A's recantation. A testified she was strongly pressured to falsely accuse Julian at his trial by her mother, who was dealing with substance abuse problems and had a history of physically and mentally abusing A, N, and their siblings. A also testified that interviews with counselors and group therapy sessions provided further impetus for her to lie. The habeas court subsequently granted Julian's amended petition for post-conviction relief, finding that A's testimony regarding her perjury at the original trial and her testimony regarding her mother's coercive tactics, drug problems, and abuse were credible.[1] Relying on the standards set forth in *State v. James,* 819 P.2d 781, 793 (Utah 1991), the court further found that A's testimony was not cumulative, could not have been reasonably discovered before trial, and would make a different result probable on retrial.

¶ 7 The State appeals, and Julian cross-appeals.

---

1. Originally, the habeas court filed a "Ruling on Petitioner's Motion for New Trial." However, after the State filed an objection, the habeas

## STANDARD OF REVIEW

¶ 8 When reviewing an appeal from an order granting post-conviction relief, we review the habeas court's conclusions of law for correctness and its findings of fact for clear error. *Seel v. Van Der Veur,* 971 P.2d 924, 926 (Utah 1998); *Julian 2,* 966 P.2d at 252.

## ANALYSIS

¶ 9 The State urges us to reverse the habeas court's grant of post-conviction relief, contending that the trial court erred by not reviewing and denying Julian's amended petition under the heightened standard imposed by the PCRA. Alternatively, it asserts that Julian's petition fails under our prior post-conviction case law because A's recantation does not rise to the level that there is a substantial likelihood that a jury will render a different result on retrial. Julian cross-appeals, contending that the habeas court erred in denying post-conviction relief based on ineffective assistance of counsel, in admitting certain of the girls' out-of-court statements, and in refusing to admit expert testimony regarding N. We address each issue in turn.

## I. APPLICABILITY OF THE PCRA TO JULIAN'S AMENDED PETITION

¶ 10 The State argues that because Julian amended his petition after the enactment of the PCRA, the habeas court erred by not reviewing Julian's amended petition under the heightened standard contained in the PCRA.

■ ¶ 11 Section 78–35a–103 of the PCRA provides, however, that "this chapter applies only to post-conviction relief proceedings filed on or after July 1, 1996." Utah Code Ann. § 78–35a–103 (1999). Julian's December 1995 petition for post-conviction relief will constitute the same proceeding until its final resolution on appeal. *See Boucofski v. Jacobsen,* 36 Utah 165, 172, 104 P. 117, 120 (1909) (stating that "[a] case is pending from the time of its commencement until its final

---

court filed an "Order on Amended Petition for Extraordinary Relief Under URCP 65 C."

determination on appeal"). Julian's amendment of the original petition is part of the original proceeding; it does not constitute a separate one. *See Black's Law Dictionary* 1204 (6th ed.1990) (stating that a proceeding includes "all possible steps in an action from its commencement to the execution of judgment"). Consequently, section 78–35a–103 precludes application of the PCRA to Julian's amended petition.

¶ 12 Even if the PCRA were silent as to its effective date, it still would not apply to Julian's amended petition. "[S]tatutory enactments which affect substantive or vested rights generally operate only prospectively [and] the substantive law to be applied throughout an action is the law in effect at the date the action was initiated." *Dep't of Social Servs. v. Higgs*, 656 P.2d 998, 1000 (Utah 1982). Law is substantive if it "creates, defines and regulates the rights and duties of the parties and ... may give rise to a cause for action, as distinguished from [procedural] law which pertains to and prescribes the practice and procedure or the legal machinery by which the substantive law is determined or made effective." *Petty v. Clark*, 113 Utah 205, 214, 192 P.2d 589, 593–94 (1948); *see also Higgs*, 656 P.2d at 1000–01 (stating that statutes "which do not enlarge, eliminate, or destroy vested or contractual rights apply not only to future actions but also to accrued and pending actions as well.") Section 78–35a–102 states that the PCRA is a "substantive legal remedy for any person who challenges a conviction or sentence for a criminal offense and who has exhausted all other legal remedies." As such, it replaces prior remedies that challenge a conviction or sentence for a criminal offense and may not be applied retroactively to Julian's post-conviction relief action. *See* Utah Code Ann. § 78–35a–102(1) (entitled "Replacement of Prior Remedies"). We therefore affirm the habeas court's decision not to apply the PCRA to Julian's amended petition.

## II. JULIAN'S PETITION UNDER PRIOR POST–CONVICTION RELIEF LAW

¶ 13 Alternatively, the State argues that the trial court should have denied Julian's petition for relief under the post-conviction relief case law in effect prior to the enactment of the PCRA.

¶ 14 While we have recognized that newly discovered evidence may warrant post-conviction relief, we have not addressed the standards that govern such decisions. *See Hurst v. Cook*, 777 P.2d 1029, 1036 (Utah 1989); *Gallegos v. Turner*, 17 Utah 2d 273, 275, 409 P.2d 386, 387 (Utah 1965). In its decision, the habeas court relied on the standards we use to determine whether to grant a new trial under rule 24 of the Utah Rules of Criminal Procedure. In that context, we require that newly discovered evidence (1) must be such as could not with reasonable diligence have been produced at trial, (2) must not merely be cumulative, (3) must not be used solely for impeachment purposes, and (4) must be such as to render a different result probable on retrial. *See James*, 819 P.2d at 793; *State v. Worthen*, 765 P.2d 839, 851 (Utah 1988).

¶ 15 In applying this standard to Julian's post-conviction relief claim, the habeas court followed a number of states that apply various combinations of these same four criteria to new evidence claims in both the criminal trial and post-conviction relief settings. *See, e.g., State v. Serna*, 167 Ariz. 373, 807 P.2d 1109, 1110 (1991); *Jones v. State*, 591 So.2d 911, 915 (Fla.1991); *Stuart v. State*, 118 Idaho 865, 801 P.2d 1216, 1220 (1990); *People v. Washington*, 171 Ill.2d 475, 216 Ill.Dec. 773, 665 N.E.2d 1330, 1337 (1996); *Powell v. State*, 714 N.E.2d 624, 627 (Ind.1999); *State v. Sims*, 239 N.W.2d 550, 554–55 (Iowa 1976); *State v. Bradley*, 246 Kan. 316, 787 P.2d 706, 707 (1990); *Woodruff v. State*, 608 N.W.2d 881, 888 (Minn.2000); *State v. Abe*, 307 Mont. 233, 37 P.3d 77, 79 (2001); *Callier v. Warden*, 111 Nev. 976, 901 P.2d 619, 626 (1995); *Hopfauf v. State*, 575 N.W.2d 646, 647 (N.D. 1998), *overruled in part by Whiteman v. State*, 643 N.W.2d 704 (N.D.2002); *Brennan v. Vose*, 764 A.2d 168, 173 (R.I.2001). We agree with these jurisdictions that the requirements that newly discovered evidence not be available at trial, not be merely cumulative, and not be used solely for impeach-

ment purposes are equally applicable in the rule 24 and post-conviction relief settings.

¶ 16 With regard to the evidentiary impact that newly discovered evidence must have, we have stated that "[i]n order to sustain the granting of [post-conviction relief], something more is required than that the evidence might have justified the granting of a new trial had it been promptly disclosed." *Ward v. Turner,* 12 Utah 2d 310, 313, 366 P.2d 72, 74 (1961). Indeed,

> in order to justify the [post-conviction] release of a convicted person ... the evidence of his innocence must be stronger than would be necessary in the first instance in support of a motion for a new trial, for special writs are applied for after the defendant's conviction has been affirmed or denied on appeal, and in a sense they invade the usual rules for the finality of judgments.

*Id.* Nothing in our pre-PRCA case law, however, suggests that newly discovered evidence must rise to the heightened standard required by the PRCA that "viewed with all the other evidence, the newly discovered material evidence demonstrates that no reasonable trier of fact could have found the petitioner guilty of the offense or subject to the sentence received." Utah Code Ann. § 78–35a–104(1)(e)(iv). This is an extremely heavy burden, one that we have generally reserved for the review of insufficiency of the evidence claims. *See State v. Kerekes,* 622 P.2d 1161, 1168 (Utah 1980) (stating that when petitioning this court to reverse on insufficiency of evidence grounds, appellant bears heavy burden of establishing "that the evidence is so inconclusive or insubstantial that reasonable minds *must have* entertained a reasonable doubt that [he] committed the crime" (emphasis added)). We have recognized that this high showing is necessary in those cases because "it is not within the prerogative of this Court to substitute its judgment for that of the fact-finder," *State v. Lamm,* 606 P.2d 229, 231 (Utah 1980); therefore, we do not "weigh conflicting evidence, the credibility of witnesses, or the weight to be given appellant's testimony," *State v. Logan,* 563 P.2d 811, 813–14 (Utah 1977). These restrictions do not exist in the post-conviction relief set-ting because there, the habeas court is a fact-finder charged with considering "both the substance of the proffered testimony and the testimony's probable weight." *State v. Hoffhine,* 2001 UT 4, ¶ 28, 20 P.3d 265 (quotations omitted).

¶ 17 Consequently, our pre-PCRA case law requires that newly discovered evidence demonstrate more than merely rendering a different result probable at retrial, but less than insuring that no reasonable trier of fact could have found the petitioner guilty of the offense. *See Summerville v. Warden,* 229 Conn. 397, 641 A.2d 1356, 1376 n. 22 (1994) (suggesting a standard "higher than a probability but lower than beyond a reasonable doubt"). This intermediate burden has been articulated by the court of appeals as "when there is a substantial likelihood that had certain evidence been available at the time of trial, a different verdict would have resulted." *Stewart v. State,* 830 P.2d 306, 309 (Utah Ct.App.1992); *Matthews v. Galetka,* 958 P.2d 949, 949 (Utah Ct.App.1998), *cert. denied, Matthews v. Warden,* 982 P.2d 88 (Utah 1998) (affirming dismissal of petition for extraordinary relief); *Casida v. DeLand,* 866 P.2d 599, 599 (Utah Ct.App.1993) (affirming habeas court's denial of post-conviction relief). We believe the phrase "substantial likelihood" adequately describes this intermediate burden, and we will therefore use it to refer to instances where the evidence must be more compelling than merely rendering a different result probable on retrial but need not rise to the level of insuring that no reasonable trier of fact could have found the petitioner guilty. In summary, we hold that in order to merit post-conviction relief under our case law in effect prior to the enactment of the PCRA, newly discovered evidence (1) must be such that it could not with reasonable diligence have been produced at trial, (2) must not be merely cumulative, (3) must not be used solely for impeachment purposes, and (4) must render a different result substantially likely at retrial.

¶ 18 In granting Julian post-conviction relief, the habeas court did not apply these criteria as outlined. Although the habeas court did rule that the newly discovered evidence was not cumulative and that it was

not available at trial, it did not consider whether the evidence's sole purpose was impeachment. Nor did it decide whether the evidence would make a different result substantially likely at trial, erroneously applying, instead, the rule 24 new trial standard. We therefore reverse the habeas court's granting of post-conviction relief to Julian and remand, directing it to determine whether (1) the new evidence in this case creates the substantial likelihood of a different result on trial and (2) the recantation evidence is solely for the purpose of impeachment.

¶ 19 We now address several issues likely to arise on remand. *See James,* 819 P.2d at 795.

### A.  Impeachment Evidence

¶ 20 The State argues that Julian is not entitled to post-conviction relief because A's recantation is impeachment evidence as to N's trial testimony. We note, without deciding the issue, however, that the rule enunciated above and applied in the rule 24 arena precludes relief where the "only use [of newly discovered evidence] is impeachment." *Worthen,* 765 P.2d at 851. The same evidence often has more than one use. This rule merely precludes the granting of relief based on evidence which has as its *only* purpose the impeachment of another witness. If the trial court determines that the *sole* purpose of A's recantation is to impeach N's testimony, it should deny Julian's petition. If however, on remand, the habeas court determines that A's recantation, while having some impeachment effect on N's testimony, can also be used in an attempt to negate an essential element of the State's case or for some other non-impeachment purpose (a very conceivable finding given that Julian was convicted based on the combined weight of both girls' testimony and that A exhibited the only possible physical evidence of the crime), it should not deny the petition on this ground.

### B.  Substantial Likelihood of Recantation Testimony Rendering a Different Result on Retrial

¶ 21 The State also argues that Julian is not entitled to post-conviction relief be-

cause the fact that N has not recanted her testimony renders it impossible for Julian to show the substantial likelihood of a different result on retrial. It cites a number of newly discovered evidence cases where courts have denied relief because recantation testimony was offset by the testimony of other victims or eyewitnesses who had not recanted. *See M.T., Sr. v. State,* 677 So.2d 1223 (1995); *People v. Davenport,* 233 A.D.2d 771, 650 N.Y.S.2d 418, 420 (N.Y.App.Div.1996). Under our case law, however, the fact that one or more witnesses have not recanted does not automatically mean that there is not a substantial likelihood of a different result on retrial. In determining whether there is a substantial likelihood, the habeas court should "consider both the substance of the proffered testimony and the testimony's probable weight" (quotations omitted). *Hoffhine,* 2001 UT 4 at ¶ 28, 20 P.3d 265; *see also State v. Loose,* 2000 UT 11, ¶ 18, 994 P.2d 1237 (stating that in recantation cases part of the determination regarding probable weight includes the likelihood that a jury would find the new evidence credible).

### III.  JULIAN'S ASSIGNMENTS OF ERROR

¶ 22 Julian contends that the habeas court committed error in denying post-conviction relief based on ineffective assistance of counsel, in admitting certain of the girls' out-of-court statements, and in refusing to allow expert testimony regarding N. He concedes that these issues would be moot if we ruled in his favor. Because we have remanded to the trial court for a determination on whether he merits post-conviction relief under the pre-PCRA law as outlined in this opinion, we do not address these contentions. Julian may raise them if there is a subsequent appeal.

### CONCLUSION

¶ 23 The trial court did not err in failing to apply the PCRA to Julian's new evidence claims. We remand to the trial court to determine (1) whether Julian's newly discovered evidence can be used for a purpose other than impeachment and (2) whether the newly discovered evidence renders a differ-

ent result at retrial substantially likely. If the trial court answers these questions in the affirmative, it should grant Julian's petition for post-conviction relief, set aside his convictions, and order a retrial.

¶ 24 Chief Justice DURHAM, Associate Chief Justice DURRANT, Justice RUSSON, and Justice WILKINS concur in Justice HOWE'S opinion.