2004 UT App 211

**STATE of Utah, Plaintiff and Appellee,**

v.

**Luis A. GUZMAN, Defendant and Appellant.**

No. 20030019–CA.

Court of Appeals of Utah.

June 24, 2004.

Heather Johnson, Salt Lake City, for Appellant.

Mark L. Shurtleff, Atty. Gen., and Jeffrey S. Gray, Asst. Atty. Gen., Salt Lake City, for Appellee.

Before BENCH, Associate P.J., ORME and THORNE, Jr., JJ.

## OPINION

ORME, Judge:

¶ 1 Defendant appeals his conviction for aggravated robbery, a first degree felony, in violation of Utah Code Ann. § 76-6-302 (2003), and aggravated kidnaping, a first degree felony, in violation of Utah Code Ann. § 76-5-302 (2003),[1] growing out of a home invasion robbery. Defendant primarily challenges the trial court's decision to let the victim testify how certain she was of her several identifications of Defendant. We affirm.

## BACKGROUND

¶ 2 On April 18, 2001, the victim in this case, a young woman, was driving home from work to her South Salt Lake townhouse, where she lived with three roommates. Meanwhile, Defendant and six others, including Fernando Fernandez and a woman named Miguella, met at a park where they ingested cocaine and methamphetamine. The group decided they were going to raid a "known" drug house for cocaine and money. Defendant and Miguella were to gain entry first and then telephone the others to follow. The group parked down the street from the targeted house, and Defendant and Miguella walked toward the house while the others remained in the van.

¶ 3 As the victim approached her townhouse and turned into the driveway, she saw a man and woman, who were later identified as Defendant and Miguella, walking along the road toward her house. The victim pulled into her garage, shut off the engine of her car, and gathered her belongings. Defendant and Miguella entered the victim's garage, and Defendant knocked on the driver's side window of her car. The victim rolled down her window, and Defendant demanded money and drugs, showed her a handgun, and told her to shut the garage door. Defendant opened the car door, showed the victim that the gun was loaded, and put the gun to her head as he ordered her out of the car.

¶ 4 After the victim exited the car, Defendant took her cell phone and cigarettes, then pushed her onto the garage floor, and Miguella tied her hands and feet together while Defendant continued to point the gun at her and demand money and drugs. The victim offered the six dollars in her wallet and tried to explain that only she and her roommates lived there, and they had no money or drugs.

¶ 5 Unpersuaded, Defendant went inside the house, leaving Miguella in the garage with the victim. Soon thereafter, the victim heard several other people moving around inside her house. Three of those individuals, one of whom had a "clown-jester-type" tattoo and was later identified as Fernandez, came to the doorway of the garage and peeked at the victim. After fifteen to twenty minutes of rummaging through the house, the group determined they were in the wrong house. They finally departed, taking some jewelry and an old cell phone. They left the victim tied up in the garage, and she eventually worked herself free, went inside to the kitchen, and vomited.

¶ 6 The victim reported the incident to the police, and an officer arrived, gathered some information, and enlisted the services of a crime scene technician. On May 23, 2001,

---

1. "As a convenience to the reader, and because the provisions in effect at the relevant times do not differ materially from the statutory provisions currently in effect, we cite to the most recent statutory codifications throughout this opinion, unless otherwise noted." *State v. Davis*, 965 P.2d 525, 527 n. 1 (Utah Ct.App.1998), *cert. denied*, 982 P.2d 88 (Utah 1999).

more than a month after the incident, Detective Jewkes met with the victim and showed her a group of photographs. She promptly identified Defendant as the gunman. At trial, the victim testified that at the time of the identification she rated her confidence in her identification as a "10" on a scale of one to ten, and she stated that "[she] will never forget his face." She further testified that the man in the photo she picked had one eye that was "just kind of deformed," like the gunman's, and that "[e]verything about his face" was consistent with her memory of the gunman. Additionally at trial, Jewkes testified that at the time of the identification, the victim stated she was "100 percent positive" of her identification.

¶ 7 From a second photo array, the victim identified another man, Fernandez, as one of the robbers who had stood in the doorway of the garage. At trial, the victim testified that at the time of the photo lineup, she rated her confidence in this identification as a "six or seven," because she "didn't get to see his face very long," but added that she "will never forget [his] tattoo." Eight months later, the victim went to an in-person lineup at the police station, and she again identified Defendant as the gunman. At trial, she testified that she was "100 percent" certain of this identification and was able to identify

Defendant within "[s]econds, as soon as he walked out."

¶ 8 Both Fernandez and Defendant were originally charged with aggravated robbery and aggravated kidnaping, with weapons and "gang" enhancements. Fernandez entered into a plea agreement, and pursuant to the agreement, he pled guilty to one count of simple robbery in exchange for his testimony against Defendant.

¶ 9 Before trial, Defendant filed a motion in limine seeking to preclude testimony about the victim's level of confidence in her two pretrial identifications of Defendant. The trial court heard oral arguments on this issue and denied the motion, concluding that the witness's confidence in her identifications was a factor that the jury could legitimately consider in evaluating the evidence.

¶ 10 At the close of trial, the court refused to give a jury instruction, requested by Defendant, concerning the jury's evaluation of Fernandez's testimony.[2] The trial court determined that the instruction would direct the jury to pay special attention to a particular witness and, therefore, use of the jury instruction would be improper. However, the court did include an instruction regarding the jury's role in evaluating and weighing the credibility of all the witnesses.[3] After due deliberation, the jury returned a verdict of

2. The jury instruction requested by Defendant reads as follows:

> You are hereby instructed that the testimony of an informer who provides evidence against a defendant must be examined and weighed by you with greater care than the testimony of an ordinary witness. Whether the informer's testimony has been affected by interest or prejudice against the defendant is for you to determine. In making that determination, you should consider (1) whether the witness has received anything (including pay, immunity from prosecution, leniency in prosecution, personal advantage, or vindication) in exchange for testimony; (2) any other case in which the informant testified or offered statements against an individual but was not called, and whether the statements were admitted in that case, and whether the informant received any deal, promise, inducement or benefit in exchange for that testimony; (3) whether the · informant has ever changed his or her testimony; (4) the criminal history of the informant; (5) any other evidence relevant to the informer's credibility.

3. The jury instruction given reads as follows:

> You are the exclusive judges of the credibility of the witnesses and the weight of the evidence. In judging the credibility of the witnesses and the weight of their testimony, you can take into consideration their bias, if any is shown, their interest, if any, in the result of the lawsuit, either as parties or otherwise, or any probable motive or lack thereof to testify as they do, if any is shown. You may consider whether any witness contradicted himself, the witnesses' deportment upon the witness stand, the reasonableness or lack thereof of their statements, their apparent frankness or candor or the want of it, their opportunity to know, their ability to understand, their capacity to remember and any other fact or circumstance which you believe may have a bearing on the truthfulness or accuracy of the statements of witnesses, and determine therefrom, in accordance with your honest convictions, what weight and credibility you should give to the testimony of each witness, measured by reason and common sense and the rules set forth in these instructions.

guilty on both the aggravated kidnaping and the aggravated robbery charges. It also found that Defendant used a firearm and acted in concert with two or more persons, subjecting him to enhanced penalties under Utah Code Ann. §§ 76–3–203 and –203.1 (Supp.2000).[4] Defendant was subsequently sentenced to consecutive terms of six years to life imprisonment for aggravated robbery and fifteen years to life for aggravated kidnaping. This appeal followed.

## ISSUES AND STANDARDS OF REVIEW

¶ 11 Defendant argues that it was error to allow the victim and Detective Jewkes to testify as to the certainty of the victim's identifications of Defendant. The standard for

> reviewing a trial court's decision to admit eyewitness identification testimony requires us to consider the record evidence and determine whether the admission of the identification is consistent with the due process guarantees of the Fourteenth Amendment of the United States Constitution and article I, section 7 of the Utah Constitution.

*State v. Hubbard,* 2002 UT 45,¶ 22, 48 P.3d 953. Thus, our review employs "a correctness standard, which incorporates a clearly erroneous standard for the review of subsidiary factual determinations." *State v. Ramirez,* 817 P.2d 774, 782 n. 3 (Utah 1991). This standard of review applies to both federal and state due process analysis. *See Hubbard,* 2002 UT 45 at ¶ 22, 48 P.3d 953.

¶ 12 Defendant also contends that the prejudicial effect of allowing the jury to hear the certainty testimony substantially outweighs its probative value. *See* Utah R. Evid. 403. "[B]alancing of the probative value against any prejudicial effect must neces-

sarily rest within the sound discretion of the trial court; and the determination [it] makes thereon should not be disturbed on appeal unless there was clear abuse of discretion." *State v. Gibson,* 565 P.2d 783, 786–87 (Utah 1977) (footnote omitted).

¶ 13 Finally, Defendant argues that Utah and federal case law support the inclusion of a cautionary jury instruction regarding an accomplice's credibility when he testifies as part of a plea bargain. A trial court's giving of a special cautionary instruction relating to corroborated accomplice testimony "is entirely discretionary with the [trial] court,[5] and we will reverse only when it has abused that discretion." *State v. Pierce,* 722 P.2d 780, 782 (Utah 1986).

## ANALYSIS

### A. Certainty Testimony

¶ 14 On appeal, Defendant's primary argument is that the trial court erred in denying his motion to preclude any reference to the victim's level of confidence in her pretrial identifications of Defendant as the gunman. Defendant argues that there is no correlation between how certain a person feels about her identification and the actual accuracy of the identification. Therefore, he argues, certainty testimony should not be admitted given its inherent unreliability. Defendant contends that the admission of such testimony at trial constituted prejudicial error, violated his due process rights under the Utah and United States Constitutions, and also violated Utah Rule of Evidence 403.

¶ 15 In considering Defendant's argument, we must keep in mind the separate and distinct roles that the judge and the jury play in determining the reliability of eyewitness testimony under the due process clauses

---

4. In April 2001, when the crimes were committed, the version of the statute in effect was the 2000 version. Subsequent amendments have no bearing on this case, although it should be noted that the 2003 amendment to section 76–3–203 "transferred the language dealing with dangerous weapons to a new section, Section 76–3–203.8." Utah Code Ann. § 76–3–203 amendment note (2003).

5. Even giving such an instruction concerning *uncorroborated* accomplice testimony is discretionary. *See* Utah Code Ann. § 77–17–7(2) (2003) ("In the discretion of the court, an instruction to the jury *may* be given to the effect that such uncorroborated testimony should be viewed with caution[.]") (emphasis added). In contrast, "such an instruction *shall* be given if the trial judge finds the testimony of the accomplice to be self contradictory, uncertain or improbable." *Id.* (emphasis added).

of the United States and Utah Constitutions. "The judge, 'as arbiter of the constitutional admissibility of an identification,' is required to scrutinize proffered evidence for constitutional defects." *State v. Nelson*, 950 P.2d 940, 943 (Utah Ct.App.1997) (quoting *State v. Ramirez*, 817 P.2d 774, 778 (Utah 1991)). The judge "must preliminarily determine whether the identification is sufficiently reliable that its admission and consideration by the jury will not deny the defendant due process." *Id.* Then, "if reliable and therefore admissible, the jury determines the credibility of that identification." *Id.*

■ ¶ 16 "We apply separate analyses when determining the reliability of eyewitness identifications under the Utah and Federal Constitutions." *State v. Mincy*, 838 P.2d 648, 657 (Utah Ct.App.), *cert denied*, 843 P.2d 1042 (Utah 1992).

### · 1. Federal Due Process

■ ¶ 17 We begin with an analysis of whether Defendant's federal due process rights were violated. Defendant argues that under federal due process analysis, the admission of the evidence was in error because it "was unreliable and it undermined the jury's objective consideration of the eyewitness identification evidence." Under the federal constitutional standard, "the trial court … must preliminarily determine whether the identification is sufficiently reliable that its admission and consideration by the jury will not deny the defendant due process." *Ramirez*, 817 P.2d at 779. In determining reliability, "the court is to consider 'all the circumstances' surrounding the identification and appraise those circumstances in light of five factors which were identified by the United States Supreme Court in *Biggers* as important to a determination of the reliability of an identification." *Id. See Neil v. Biggers*, 409 U.S. 188, 199, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972). As set forth in *Biggers*,

the factors to be considered in evaluating the likelihood of misidentification include 1) the opportunity of the witness to view the criminal at the time of the crime, 2) the witness'[s] degree of attention, 3) the accuracy of the witness'[s] prior description of the criminal, 4) *the level of certainty demonstrated by the witness at the confrontation*, and 5) the length of time between the crime and the confrontation.

409 U.S. at 199, 93 S.Ct. at 382 (emphasis and numbering added). Defendant's federal due process argument clearly fails because *Biggers* specifically recognizes "the level of certainty demonstrated by the witness at the confrontation" as a valid factor for a court to consider in determining the reliability of an identification. *Id.*

### 2. State Due Process

■ ¶ 18 "Utah's due process analysis pertaining to the constitutional reliability of eyewitness testimony is different than, but 'as stringent as, if not more stringent than, the federal analysis.' " *State v. Nelson*, 950 P.2d 940, 942 (Utah Ct.App.1997) (quoting *Ramirez*, 817 P.2d at 784). Our Supreme Court has criticized and "specifically rejected the 'level of certainty demonstrated by the witness at the confrontation' as a factor to be used in determining the constitutional reliability of an identification." *State v. Hoffhine*, 2001 UT 4, ¶ 16, 20 P.3d 265 (quoting, without attribution, *Biggers*, 409 U.S. at 199, 93 S.Ct. at 382). In *State v. Long*, 721 P.2d 483 (Utah 1986), the Utah Supreme Court itemized "areas of concern" that should be addressed in determining reliability under Utah due process analysis:

1) the opportunity of the witness to view the actor during the event; 2) the witness's degree of attention to the actor at the time of the event; 3) the witness's capacity to observe the event, including his or her physical and mental acuity; 4) whether the witness's identification was made spontaneously and remained consistent thereafter, or whether it was the product of suggestion; and 5) the nature of the event being observed and the likelihood that the witness would perceive, remember and relate it correctly.

*Id.* at 493. "If the court finds the identification reliable in light of these five factors, then it is admissible under the Due Process Clause of the Utah Constitution." *Nelson*, 950 P.2d at 943.

¶ 19 Defendant argues that because the level of confidence in an identification is not

included as a factor to be considered by the court, the testimony regarding the victim's confidence in her identifications must not be admitted at trial at all. We believe Defendant's argument blurs the distinction between what the trial court must consider in determining whether the eyewitness identification evidence is sufficiently reliable to be admitted and what the jury may consider in weighing the credibility of such evidence if it is properly admitted. Defendant relies on several Utah cases to support his contentions. Although we disagree with Defendant's argument that these cases support his conclusion, we do think it is relevant to discuss each of these cases because they illuminate the path Utah case law has taken on this issue.

¶ 20 Defendant cites *State v. Long* as a case that recognizes the "poor relationship between witness confidence and accuracy of identification." 721 P.2d at 490. In *Long*, the Utah Supreme Court was "presented with the question of the reliability of eyewitness identifications in the context of a claim that an instruction cautioning the jury about the fallibility of such identifications was required where the accuracy of an identification was at issue." *Ramirez*, 817 P.2d at 779. To answer this question, the Court examined the numerous "empirical studies documenting the unreliability of eyewitness identification," *Long*, 721 P.2d at 488, recognized the lack of awareness among juries of the inherent unreliability of this type of testimony, and concluded that "at a minimum, additional judicial guidance to the jury in evaluating such testimony is warranted ... whenever

eyewitness identification is a central issue in a case." *Id.* at 492.

¶ 21 The Court in *Long* "laid the foundation for a separate Utah constitutional due process analysis of the reliability of eyewitness identifications." *Ramirez*, 817 P.2d at 779. The Court concluded that failure to give a cautionary instruction, when eyewitness identification is a crucial issue, would " 'deny the defendant due process of law under article I, section 7 of the Utah Constitution.' " *Id.* at 780 (quoting *State v. Long*, 721 P.2d at 492) (emphasis omitted). This is significant because, prior to *Long*, the Court had "previously said that whether such instructions must be given in a particular case is a matter left largely to the discretion of the trial court." *Long*, 721 P.2d at 487. *See, e.g., State v. Tucker*, 709 P.2d 313, 316 (Utah 1985) ("[T]he question of whether such an instruction is required in a particular case has been left to the discretion of the trial courts.").

¶ 22 *Long* recognized "the weaknesses inherent in eyewitness identification," 721 P.2d at 490, and determined that this potential problem can be ameliorated by mandating the trial court to include an appropriate jury instruction.[6] The *Long* court offered a cautionary jury instruction[7] that, "[i]f used, ... would certainly satisfy [the Court's] expressed concerns about the need for cautionary instructions."[8] *Id.* at 494–95. The Court did not conclude that certainty testimony must be wholly excluded from trial. Nor did the Court suggest the five "areas of concern" it identified were an exhaustive list

6. Although the holding in *State v. Long*, 721 P.2d 483 (Utah 1986), is relevant, it primarily focuses on the jury's role in evaluating and weighing the credibility of the eyewitness testimony and not the judge's role of determining the constitutional reliability, and thus the admissibility, of the evidence in the first place. Subsequent cases have more particularly focused on the judge's role in admitting such evidence.

7. It should be noted that the factors the *Long* court suggests be included in the jury instruction are the same factors the trial court considers in determining the reliability and admissibility of the identifications. The *Long* factors are applicable to both the judge's role in admitting the identification testimony and the jury's role in evaluating such testimony.

8. The approved jury instruction can be found in footnote 8 of the *Long* opinion. *See* 721 P.2d at 494–95 n. 8. The *Long* instruction discusses the importance of identifying the defendant as the person who committed the crime and the prosecution's role in proving beyond a reasonable doubt that the defendant was the person who committed the crime. *See id.* Additionally, it states that multiple factors can affect the accuracy of a witness's identification of the defendant as the person who committed the crime. *See id.* The instruction includes most of the *Long* factors, as well as additional, more specific, factors to be considered when examining the evidence. *See id.*

of eyewitness identification criteria, as those factors were characterized as "example[s]" of the difficulty such testimony presents, and the jury instruction the Court approved by no means mirrored the "areas of concern." *Id.* at 493.

¶ 23 Next, Defendant cites to *State v. Ramirez,* 817 P.2d 774 (Utah 1991), as support for his argument. In *Ramirez,* the Utah Supreme Court recognized that the "[p]otential for role confusion and for erosion of constitutional guarantees inheres in this overlap of responsibility of judge and jury to determine the same issue." *Id.* at 778. The Court stated that "courts cannot properly sidestep their responsibility to perform the required constitutional admissibility analysis," *id.,* because "[t]he danger of such an abdication of responsibility is particularly serious where the admissibility of an eyewitness identification is concerned." *Id.* at 779.

¶ 24 The Court compared the factors identified in *Long* to those that originated in *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). *Ramirez* distinguished "[t]he analytical model to be followed under article I, section 7 of the Utah Constitution," 817 P.2d at 781, from the *Biggers* factors and concluded that "*Long* teaches that we do not agree entirely with the *Biggers* listing of the relevant criteria for determining the reliability of eyewitness identifications." *Id.* at 780. "In *Biggers,* the [United States Supreme] Court listed as a factor 'the level of certainty demonstrated by the witness at the confrontation,' " *id.* at 781 (quoting *Biggers,* 409 U.S. at 199, 93 S.Ct. at 382), while "[i]n *Long,* we criticized this factor and essentially rejected it as an indicator of an identification's reliability." *Id. See Long,* 721 P.2d at 490. The Court in *Ramirez* concluded that "[t]he ultimate question to be determined is whether, under the totality of the circumstances, the identification was reliable." 817 P.2d at 781.

¶ 25 In *Ramirez,* unlike in *Long, see supra* note 6, the court was primarily focused on the trial court's role in deciding to admit such testimony rather than the jury's role in considering it if admitted. *See Ramirez,* 817 P.2d at 778–80. However, despite its criticism of including certainty in the context of passing on the *admissibility* of such evidence

under state due process analysis, the Court did not state that certainty testimony was so unreliable that it must be excluded from trial altogether. In other words, the trial court's mandated appraisal of reliability for purposes of admissibility does not include the witness's self-described certainty, but it does not follow that the jury should be prevented from knowing the witness's own estimation of her certainty.

¶ 26 Defendant next cites to *State v. Hoffhine,* 2001 UT 4, 20 P.3d 265, in which a witness identified the defendant prior to trial and, at the time, rated his level of certainty in the identification as a " 'nine and a half' " on a ten point scale. *Id.* at ¶ 7. At the preliminary hearing, the witness testified that although "he had positively identified defendant as the robber at the showup identification on the night of the robbery," he later became less certain of his confidence in the identification. *Id.* at ¶ 9. The trial court subsequently granted the defendant's motion to suppress this eyewitness identification testimony, but ruled that the witness was "allowed to testify about the facts and circumstances surrounding the showup identification." *Id.* at ¶ 10. "At trial, [the witness] testified that he was 'pretty positive' that defendant was the robber at the time of the showup, telling [the officer] that he was 'a nine and a half' on a ten point scale, in terms of the degree of his certainty." *Id.* at ¶ 18 n. 3 (emphasis omitted).

¶ 27 On appeal, the defendant argued that the trial court erred in "admitting into evidence the underlying facts of the showup identification," *id.* at ¶ 12, and the Utah Supreme Court agreed that it was erroneous "to admit evidence of the showup procedure after granting the motion to suppress and concluding that the showup … did not satisfy the *Ramirez* factors for constitutional reliability." *Id.* at ¶ 16. The Court ruled that "allowing the victim to testify about the underlying facts of the showup was erroneous," *id.* at ¶ 17, given the trial court's previous ruling on the evidence's admissibility. Nevertheless, the Supreme Court concluded this inconsistency was harmless error because its own application of the *Long* factors resulted in the determination that the evidence "met

the threshold test for constitutional reliability," and therefore, "all evidence of the show-up could [properly] have been admitted." *Id.* at ¶ 19.

¶ 28 In its application of the *Long* factors, the Court characterized the witness's testimony that "he was 'pretty positive' that defendant was the robber at the time of the showup," and that the witness was " 'a nine and a half' on a ten point scale, in terms of the degree of his certainty," *id.* at ¶ 18 n. 3 (emphasis omitted), as evidence that the "identification was made spontaneously," "remained consistent," and was not "the product of suggestion." *Id.* at ¶ 18. Although the Court did not specifically state that the witness's certainty testimony was properly admitted as such, it included the evidence in its application of the *Long* factors in concluding that "the showup identification could have been admitted *in its entirety.*" *Id.* at ¶ 17 (emphasis added).

¶ 29 Although Defendant only briefly mentioned *State v. Hubbard*, 2002 UT 45, 48 P.3d 953, as supporting his argument, that case is particularly insightful and merits a full discussion in resolving the issue before us. In *Hubbard*, the Utah Supreme Court stated that "[w]hile these [*Long*] factors provide guidance, the list is certainly not an exhaustive or exclusive list of factors that may be considered in determining whether an identification is reliable, and, therefore, not violative of due process." *Hubbard*, 2002 UT 45 at ¶ 27, 48 P.3d 953. The Court applied the *Long* factors to the facts of the case and "conclude[d] that the pretrial photo identification was sufficiently reliable such that defendant's due process rights were not violated by permitting [i.e., admitting] the identification testimony of [the two eyewitnesses]." *Id.* at ¶ 28.

¶ 30 In the Court's examination of the *Long* factor dealing with "whether the witness[es'] identification was made spontaneously and remained consistent thereafter," *State v. Long*, 721 P.2d 483, 493 (Utah 1986), the Court included the witnesses' certainty testimony as being illustrative of its reliability. In its analysis, the Court noted: "When asked to describe his certainty to [the officer, the first witness] said, 'I'm positive.' [The second witness] immediately identified defendant and indicated her level of certainty as seven on the ten point scale." *Hubbard*, 2002 UT 45 at ¶ 28, 48 P.3d 953. The Court concluded that the "witness identifications were not so unreliable as to warrant exclusion of the identification testimony from consideration by the jury." *Id.* at ¶ 30. The Court's analysis in *Hubbard* suggests that not only can certainty testimony be considered by a jury in evaluating eyewitness identification testimony otherwise properly admitted, but it can be considered by the trial court as it considers *admissibility* if it assists the court in determining whether the eyewitness identification was sufficiently reliable. Thus, the trial court, in its gatekeeping function, determines "whether the proffered evidence is sufficiently reliable such that it can be presented to the jury for their deliberation," *id.* at ¶ 30, and "it is the role of the jury to decide how much weight to give the testimony of particular witnesses." *Id.* at ¶ 15. We agree that the weight to be given certainty evidence in identification cases is best considered by the jury in determining the credibility of a witness's testimony. "Courts need not, nor should they, step into the province of the jury and decide the ultimate matter of identification for the jurors." *Id.* at ¶ 30.

¶ 31 We reject Defendant's argument that certainty testimony may not be admitted at trial at all. The cases Defendant cites,[9] far

**9.** To support his argument regarding the inherent deficiencies of certainty testimony, Defendant also cites to Utah cases that he contends prevented him from presenting expert testimony at trial to educate the jury about these deficiencies. *See, e.g., State v. Butterfield*, 2001 UT 59,¶¶ 41–44, 27 P.3d 1133 (noting that the requirement that the trial court give a cautionary jury instruction " 'has not extended ... to include additional expert testimony concerning eyewitness identification' ") (quoting *State v. Kinsey*, 797 P.2d 424,

427 (Utah Ct.App.), *cert. denied*, 800 P.2d 1105 (Utah 1990)). Defendant alleges that this limitation on expert testimony further emphasizes the need to exclude certainty testimony because the jury has no other means of learning of its unreliability. We disagree with the premise. We think that in appropriate cases expert testimony could be allowed to advise a jury of the potential unreliability of certainty testimony. *See, e.g., State v. Hubbard*, 2002 UT 45,¶ 14, 48 P.3d 953 ("We have not adopted a per se rule of inadmissibility

from supporting his argument that certainty testimony must not be admitted because of its inherent unreliability, actually establish these principles: (1) certainty testimony is not a separate admissibility factor under *Long* and *Ramirez*; (2) certainty testimony may nonetheless be relevant in the trial court's admissibility assessment, insofar as it sheds light on the spontaneity/consistency admissibility factor; and (3) certainty testimony is, in any event, relevant once the eyewitness identification is deemed admissible, insofar as it assists the jury's evaluation of the credibility of the identification testimony and the weight to be accorded it.

### 3. Rule 403

¶ 32 Defendant's last argument regarding certainty testimony is that its admission violated rule 403 of the Utah Rules of Evidence. Defendant argues that the probative value of the victim's certainty testimony is substantially outweighed by its prejudicial effect on the jury. Rule 403 states: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Utah R. Evid. 403. "When applying rule 403, it is necessary to determine first whether the proffered evidence has an unusual propensity to unfairly prejudice, inflame, or mislead the jury." *State v. Dunn*, 850 P.2d 1201, 1221 (Utah 1993). "If not, we indulge a presumption in favor of admissibility." *Id.* at 1221–22. We only overturn the court's determination if it is " 'beyond the limits of reasonability' " and, even if it is, if admission of the evidence was prejudicial. *Id.* at 1221 (quoting *State v. Hamilton*, 827 P.2d 232, 240 (Utah 1992)).

¶ 33 Defendant fails to cite any Utah cases supporting his argument that, under rule 403, certainty testimony "has an unusual propensity to unfairly prejudice, inflame, or mislead the jury," *id.*, nor has he otherwise persuaded us that such is the case. "Rule 403 is not to be used to allow the trial judge to substitute his assessment of the credibility of testimony for that of the jury by excluding testimony simply because he does not find it credible." *State v. Branch*, 743 P.2d 1187, 1190 (Utah 1987), *cert. denied*, 485 U.S. 1036, 108 S.Ct. 1597, 99 L.Ed.2d 911 (1988). "The trial judge was correct in allowing the jury to assess the credibility of the eyewitness" rather than to make that determination on his own.[10] *Id.* We conclude that the trial court's decision to permit the certainty testimony in the face of a Rule 403 challenge was well within the limits of reasonability.

### B. Cautionary Jury Instruction

¶ 34 Defendant also argues on appeal that the trial court erred in refusing to give the cautionary jury instruction Defendant submitted regarding the testimony of Fernandez, who testified at trial against Defendant as part of a plea agreement. Defendant argues that the cautionary instruction would have advised the jury to carefully evaluate Fernandez's testimony, in light of his plea agreement and his status as an accomplice, without implying that his testimony was unbelievable. Defendant argues that not only is the use of an instruction, such as the one he submitted, supported by federal and Utah case law and the rules of evidence but, moreover, it is necessary to enlighten the jury about Fernandez's motivation to lie and his untrustworthiness.

---

of expert testimony regarding eyewitness identification."). In this case, however, Defendant did not seek the admission of expert testimony regarding the confidence/accuracy correlation, and we conclude that the cautionary jury instruction given, which was modeled after the example in *Long*, was adequate to advise the jury of the problems with eyewitness identification testimony.

10. In ruling on Defendant's motion in limine, the trial court stated that "I think the jury would

want to know how confident the witness was in their identification. They may choose to believe it. At least they are entitled to know how confident the witness is." We agree with the trial court—and so, surely, would Defendant if the thrust of the witness's testimony was that she was not very certain of her identification of Defendant or if she characterized the level of her certainty as only being a two or three on a scale of one to ten.

¶ 35 According to Utah Code Ann. § 77-17-7(2) (2003), a cautionary instruction *may* be given if the accomplice testimony is "uncorroborated" and *shall* be given if the trial judge finds the accomplice testimony "self-contradictory, uncertain or improbable." *See supra* note 5 & accompanying text. *See also State v. Dunn,* 850 P.2d 1201, 1226 (Utah 1993) (stating that defendant was not prejudiced by his attorney's failure to request an accomplice instruction given the substantial evidence supporting his conviction).

¶ 36 While it is true that Fernandez's story and, subsequently, his testimony at trial varied from time to time, the testimony of the victim was, for the most part, consistent with and served to corroborate Fernandez's testimony. Such corroboration means section 77–17–7 did not apply, by its own terms, although even in the case of corroborated accomplice testimony, giving such an instruction is discretionary. *See State v. Pierce,* 722 P.2d 780, 782 (Utah 1986) (per curiam). Where the testimony is corroborated, we would of course be especially reluctant to find an abuse of discretion in the failure to give such an instruction, and we see no abuse of discretion here.

¶ 37 In this case, such an instruction was simply not necessary to prompt the jury to question Fernandez's veracity. Fernandez himself admitted in testimony before the jury that he had lied to the police on numerous occasions about his involvement in the robbery and that he entered into a plea agreement with the State, in which he was allowed to plead guilty to reduced charges in exchange for his testimony at trial against Defendant. This testimony alerted the jury to Fernandez's possible motive for testifying with less than total candor. Additionally, the jury was informed that Fernandez had previously been convicted of a felony and had served time in prison on an unrelated conviction.

¶ 38 The jury was also instructed generally about its obligations in judging the credibility of the witnesses and the weight of the evidence. Specifically, the court instructed the jury that it was allowed to take into consideration a witness's bias, interests, motives to testify, contradictions of themselves, candor, or any other fact or circumstance which the jurors believed had an impact on the witness's truthfulness and accuracy. "We have held that it 'is not error to refuse a proposed instruction if the point is properly covered in the other instructions.'" *State v. Dunn,* 850 P.2d 1201, 1228 (Utah 1993) (quoting *State v. Hamilton,* 827 P.2d 232, 238 (Utah 1992)). We conclude that between Fernandez's own admissions and the general instruction given on evaluating witness testimony, the jury was adequately apprised that Fernandez's testimony was to be taken with a grain of salt. We see no error in the trial court's refusal to give the additional instruction requested by Defendant.

## CONCLUSION

¶ 39 Defendant's federal and state due process rights were not violated by the admission of the victim's and Detective Jewkes's testimony regarding the victim's confidence in her pretrial identifications of Defendant as the gunman. Nor did the trial court exceed the bounds of sound discretion in determining that the certainty testimony's potential for unfair prejudice did not outweigh its probative value. Lastly, we conclude that the jury instruction given on weighing and judging the credibility of all witnesses was adequate to advise the jury how to evaluate Fernandez's testimony, especially given that the need for caution was evident from his own testimony. Therefore, the trial court did not abuse its discretion in refusing to give an additional cautionary jury instruction.

¶ 40 Affirmed.[11]

¶ 41 WE CONCUR: RUSSELL W. BENCH, Associate Presiding Judge and WILLIAM A. THORNE JR., Judge.

---

11. As we have concluded that none of the claimed errors were errors in actuality, it follows that Defendant's cumulative error argument is also unavailing.