2006 UT 12

**STATE of Utah, Plaintiff
and Respondent,**

v.

**Luis A. GUZMAN, Defendant
and Petitioner.**

No. 20040647.

Supreme Court of Utah.

Feb. 28, 2006.

Mark L. Shurtleff, Att'y Gen., Jeffrey S. Gray, Asst. Att'y Gen., Carlos A. Esqueda, Salt Lake City, for plaintiff.

Lori J. Seppi, Heather Johnson Chesnut, Salt Lake City, for defendant.

WILKINS, Associate Chief Justice:

¶ 1 Luis A. Guzman was convicted of aggravated robbery and aggravated kidnapping in connection with a home invasion robbery. On appeal, Guzman challenged the admission of eyewitness certainty evidence. The court of appeals affirmed the trial court's conviction, and we granted certiorari to review the court of appeals's decision. We are asked to determine (1) whether the admission of testimony concerning an eyewitness's subjective certainty of identification violates the Due Process Clause of the Utah Constitution and (2) whether testimony concerning an eyewitness's subjective certainty of identification is admissible under rule 403 of the Utah Rules of Evidence. We affirm.

### INTRODUCTION

### I. FACTUAL BACKGROUND

¶ 2 Defendant Luis A. Guzman and four friends—three men and one woman—used cocaine and methamphetamine on April 18, 2001, at a park, where the group of four planned to raid a supposed drug house in South Salt Lake for cocaine and money that evening. The plan was to first send Guzman and the woman to the house, and once they had entered, Guzman would call the other three men for back-up.

¶ 3 At approximately 6:00 p.m., twenty-two-year-old Claryn Miller returned from work to see Guzman and the woman walking down the street towards her home. Miller pulled into her garage, turned off the engine of her car, and gathered her belongings. But before Miller closed her garage door, Guzman and the woman walked into the garage and approached her car window. Miller rolled down the window and Guzman pointed a gun at her, ordering her out of the car and onto the garage floor, where he tied her hands and feet together with a pair of nylons. Believing that a man who owed him drugs and money lived at the location, Guzman yelled and cursed at Miller, calling her a liar when she explained that only she and three other women lived in the house and that they knew nothing about a drug ring. Unpersuaded, Guzman rummaged through her purse for information. He found only six dollars and a cell phone.

¶ 4 Guzman then entered Miller's house through the garage door, leaving the woman in the garage with Miller. Guzman immediately called the other three men waiting outside, and once they knocked on the door, he let them into Miller's house. The group of men ransacked the house looking for drugs and money but found only two rings, some cigarettes, and a second cell phone.

¶ 5 During the home invasion robbery, Guzman occasionally returned to the garage. Miller saw Guzman's face approximately twenty times as he passed between the garage and the house. At one point, a man with a "clown-jester type" tattoo over his right eye, later identified as Fernando Fernandez, looked into the garage at Miller. Guzman and his friends contemplated killing Miller but ultimately decided to leave her alone. After fifteen to twenty minutes in the

house, Guzman and his cohorts told Miller they had the wrong house.

¶ 6 When the men left the house, Miller waited on the garage floor a few minutes and eventually freed herself. Traumatized by the incident, she vomited when she walked into the kitchen. Miller drove to work where she told a co-worker about the incident, and the co-worker drove her to the house of a neighbor, who was a police officer. The neighbor called the police and had Miller report the incident. Shortly thereafter, an officer assigned to the case arrived at Miller's home. He called a crime scene technician and performed a standard walk-through, but due to Miller's emotional state that night, he did not take a formal statement. Nevertheless, one or two weeks later, another officer assigned to the case took a formal statement from Miller.

¶ 7 Based on the descriptions in Miller's statement, officers prepared two photo arrays. The first included a photo of Fernando Fernandez. The second included Guzman's photograph. Miller identified Fernandez from the first photo array as the man with the "clown-jester type" tattoo over his eye and rated her level of certainty at six or seven out of ten. She identified Guzman from the second photo array as the gunman and rated her certainty at ten out of ten. The officer also presented two other photo arrays, one of men and one of women, but Miller was unable to identify anyone from those arrays. However, nine months later, Miller again identified Guzman from a lineup with one hundred percent certainty.

¶ 8 Fernandez eventually waived his right to remain silent and spoke with the officer who compiled the photo arrays, Officer Jewkes, as part of a plea bargain. Fernandez disclosed the names of all parties involved and admitted that Guzman and the woman had entered the house with the intent to commit robbery. Fernandez further claimed that although he had been in the house that night, the other men involved in the robbery never entered the home.

## II. PROCEDURAL BACKGROUND

¶ 9 The State charged Guzman with aggravated robbery and aggravated kidnapping. Guzman waived his right to a preliminary hearing, and the case was subsequently bound over for trial. In a pretrial motion, Guzman asked the trial court to exclude evidence pertaining to Miller's confidence level in her identification of Guzman. But the trial court denied the motion. Following a three-day trial, the jury convicted Guzman of both aggravated burglary and aggravated kidnapping.

¶ 10 In a unanimous decision, the court of appeals affirmed the trial court's admittance of the evidence pertaining to Miller's confidence testimony. The court explained that a jury may assess the credibility of the eyewitness rather than have the judge make that determination. We granted certiorari to review the decision of the court of appeals. We now affirm.

## ANALYSIS

¶ 11 On certiorari, we review the decision of the court of appeals for correctness.[1] At the same time, because the question of law requires the application of record facts to the due process standard, we incorporate a clearly erroneous standard for necessary subsidiary factual determinations.[2]

¶ 12 Defendant Guzman contends that the court of appeals erred in admitting the victim's testimony regarding her certainty in identifying Guzman. We are asked to determine (1) whether the admission of testimony concerning an eyewitness's subjective certainty of identification violates the Due Process Clause of the Utah Constitution and (2) whether such testimony is inadmissible under rule 403 of the Utah Rules of Evidence. Because our case law supports the admission of certainty evidence, we affirm the court of appeals's holdings on both issues.

### I. THE ADMISSION OF CERTAINTY EVIDENCE DOES NOT VIOLATE THE DUE PROCESS CLAUSE OF THE UTAH CONSTITUTION

¶ 13 We first address the question of whether the court of appeals correctly af-

---

1. *See State v. Hansen*, 2002 UT 125, ¶ 25, 63 P.3d 650.

2. *See State v. Hubbard*, 2002 UT 45, ¶ 22, 48 P.3d 953.

firmed the district court's decision to admit the victim's testimony relating to her certainty in identifying Guzman. Guzman argues that the Due Process Clause of the Utah Constitution prohibits the admission of certainty testimony. We disagree.

¶ 14 The Due Process Clause of the Utah Constitution guarantees that "[n]o person shall be deprived of life, liberty or property, without due process of law."[3] "[T]he basic due process issue is whether the identification is sufficiently reliable to be admitted into evidence."[4] Guzman cites a series of Utah cases to support his assertion that admitting the certainty testimony at hand deprives him of the life, liberty, or property guaranteed under the Due Process Clause because the evidence is sufficiently unreliable. A thorough analysis of our case law regarding this issue requires a brief summation of each relevant case relied on by Guzman.

¶ 15 First, Guzman supports his assertion by citing *State v. Long,* a case involving the cautionary instructions given to juries about the level of accuracy of eyewitness identifications.[5] In *Long,* we itemized the following factors a jury instruction should address to assist jurors in determining the accuracy of eyewitness identifications:

> (1) the opportunity of the witness to view the actor during the event; (2) the witness's degree of attention to the actor at the time of the event; (3) the witness's capacity to observe the event, including his or her physical and mental acuity; (4) whether the witness's identification was made spontaneously and remained consistent thereafter, or whether it was the product of suggestion; and (5) the nature of the event being observed and the likeli-

hood that the witness would perceive, remember[,] and relate it correctly.[6]

¶ 16 Guzman argues that our case law suggests that certainty testimony must be excluded in Utah because it is not included on the list of *Long* factors a jury should consider in determining the accuracy of eyewitness identifications. He contrasts our criteria with those of the United States Supreme Court, which specifically includes certainty evidence on its list of factors a jury should consider under similar circumstances.[7] Guzman incorrectly assumes we deem certainty evidence inadmissible merely because we intentionally excluded it from our list of factors a jury should consider. We concede that we "specifically rejected the 'level of certainty demonstrated by the witness at the confrontation' as a factor to be used in determining the constitutional reliability of an identification."[8] Moreover, we have explicitly stated that "Utah's due process analysis pertaining to the constitutional reliability of eyewitness testimony is different than, but 'as stringent as, if not more stringent than, the federal analysis.'"[9] Nevertheless, in *Long* we held that "failure to give a cautionary instruction when eyewitness identification is a crucial issue would 'deny the defendant due process of law under article I, section 7 of the Utah Constitution.'"[10] We did not conclude that considering eyewitness certainty violated due process. In sum, although our analysis addressed the "weaknesses inherent in eyewitness identification," we did not hold that confidence testimony *must* be excluded from the list of factors a jury may consider.[11]

¶ 17 Guzman next cites *State v. Ramirez,* a case in which we dealt with the admissibility of eyewitness identifications.[12] Guzman argues that *Ramirez* denies trial judges the ability to consider certainty testimony in de-

---

3.  Utah Const. art. I, § 7.

4.  *State v. Nelson,* 950 P.2d 940, 942 (Utah Ct. App.1997) *see also Neil v. Biggers,* 409 U.S. 188, 198–99, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).

5.  721 P.2d 483 (Utah 1986).

6.  *Id.* at 492–93.

7.  *See, e.g., Biggers,* 409 U.S. at 199, 93 S.Ct. 375.

8.  *State v. Hoffhine,* 2001 UT 4, ¶ 16, 20 P.3d 265.

9.  *Nelson,* 950 P.2d at 942 (quoting *State v. Ramirez,* 817 P.2d 774, 784 (Utah 1991)).

10.  *Long,* 721 P.2d at 492.

11.  *Id.* at 490.

12.  817 P.2d 774.

termining the reliability, and thus admissibility, of eyewitness identifications. We held that "[t]he ultimate question to be determined is whether, under the totality of the circumstances, the identification was reliable." [13] Although *Ramirez* presented different issues than those in *Long,* we applied the *Long* analysis because both cases confronted the reliability of certainty testimony. Specifically, *Long* dealt with whether jury instructions should admonish the jurors to consider certainty testimony when assessing eyewitness identifications, while *Ramirez* addressed whether trial courts may consider certainty testimony in determining the reliability and admissibility of those identifications and related testimony. Applying the *Long* factors to *Ramirez,* we again excluded a witness's level of certainty as a factor a judge must consider. We did not, however, preclude the judge from taking certainty evidence into account.

¶ 18 Furthermore, our *Ramirez* holding emphasized the "role of judge, as the arbiter of the constitutional admissibility of an identification, and the role of the jury, as the ultimate finder of fact." [14] We explained that after the prosecution demonstrates the admissibility of the proffered evidence, "[t]he defendant is then entitled to a determination by the court of the evidence's constitutional admissibility. If the court finds the evidence admissible, it may be presented to the jury." [15] In other words, once the judge determines the threshold reliability of the witness's testimony and identification, which may include certainty evidence, the jury has the ultimate duty to determine the weight given to the relevant certainty testimony.[16]

¶ 19 Guzman also bases his argument on our reasoning in *State v. Hoffhine,* a case involving the admissibility of evidence regarding a showup identification.[17] In particular, we were asked to determine the reliability of the eyewitness identification,

which included the witness's testimony that he was certain to "nine and a half" on a ten-point scale. The trial court granted the motion to suppress any mention at trial of the eyewitness identification and explicitly prohibited the officers from testifying that the victim positively identified the defendant. On appeal, we applied the five *Long* factors because the central issue turned on the reliability of eyewitness identification. We concluded that the showup identification met the threshold test for constitutional reliability and that all evidence from the showup, including the certainty testimony, should have been admitted.[18] Again, we never explicitly stated, nor did we imply, that either eyewitness identifications or certainty evidence is per se inadmissible.

¶ 20 Finally, Guzman relies on our most recent case involving eyewitness identifications, *State v. Hubbard.*[19] In *Hubbard,* a man convicted of aggravated robbery, aggravated burglary, and aggravated assault argued that the trial court should have allowed an expert witness to testify regarding the fallibility of eyewitness identification. The defendant also argued that the trial court erred in admitting a witness's pretrial photo array identification of defendant, which included the statement "I'm positive." We concluded that the decision to "allow proffered expert testimony regarding eyewitness identification testimony is a matter best left to the trial court's discretion because of the trial court's superior position to judge the advisability of allowing such testimony." [20] We also held that the pretrial identification procedures used by the officers in the case were not impermissibly suggestive and that admitting the eyewitness testimony, which included the certainty statement, was not violative of the Due Process Clause.

¶ 21 In our *Hubbard* analysis, we emphasized that the "standard for determining whether defendant's right to due process as

---

13. *Id.* at 781.

14. *Id.* at 778.

15. *Id.*

16. *See id.*

17. 2001 UT 4, 20 P.3d 265.

18. *See id.* ¶ 17.

19. 2002 UT 45, 48 P.3d 953.

20. *Id.* ¶ 14.

guaranteed by article I, section 7 of the Utah Constitution was denied is whether, under the totality of the circumstances, the identifications were reliable."[21] We noted that "trial courts have a critical responsibility to scrutinize proffered evidence for constitutional defects, and failure to do so 'would leave protection of constitutional rights to the whim of a jury and would abandon the courts' responsibility to apply the law.'"[22] We recognized the powerful effect eyewitness identifications have on juries and therefore chose to, again, apply the five *Long* factors "as a test for analyzing, as a preliminary constitutional matter, whether an eyewitness identification is sufficiently reliable to be presented to the jury."[23] And this list of factors excludes the witness's level of certainty.[24] Nevertheless, we explicitly stated that "[w]hile these factors provide guidance, the list is certainly not an exhaustive or exclusive list of factors that may be considered in determining whether an identification is reliable, and therefore, not violative of due process."[25] We concluded our Due Process Clause analysis by explaining that

> [c]ourts need not, nor should they, step into the province of the jury and decide the ultimate matter of identification for the jurors. Courts must simply decide whether the testimony was sufficiently reliable so as not to offend defendant's right to due process by permitting clearly unreliable identification testimony before the jury.[26]

Therefore, the court's responsibility is to initially screen, under a totality of the circumstances standard, the eyewitness testimony so that it is sufficiently reliable as not to offend a defendant's right to due process. The jury, on the other hand, taking all presented evidence into consideration, determines whether to believe the eyewitness's identification.

¶ 22 In addition to the above-mentioned cases, Guzman supplements his argument with sociological research supporting the in-

accuracy of eyewitness identifications. We accordingly recognize the potential problems with admitting eyewitness certainty testimony. For example, witness confidence may be influenced by clues, intentional or inadvertent, from law enforcement officers or even lawyers working on the case. Similarly, positive feedback to the witness may inflate the witness's confidence. There is also a potential danger for jurors to give too much weight to witness confidence. Even so, some recent research supports a direct link between witness certainty and the accuracy of the identification.[27] Ultimately, we acknowledge the sociological concerns with certainty evidence but are unpersuaded by Guzman's argument that admitting such evidence and testimony is unconstitutional.

¶ 23 In summary, both our case law and modern sociological research support the admission of testimony concerning an eyewitness's certainty of identification. A jury ought to be able to consider certainty evidence in determining a witness's credibility and portrayal of the facts. The jury may then decide, based on the remaining facts, whether the certainty testimony is accurate and truthful. However, we do *not require* the court or the jury to consider a witness's level of certainty in determining admissibility or reliability, as indicated by its exclusion from the *Long* factors. Nevertheless, due process is not violated by *permitting* the court or the jury to weigh certainty testimony with all other evidence it considers in making necessary determinations. Thus, the court of appeals correctly held that admitting eyewitness certainty testimony did not violate the Utah Due Process Clause.

## II. TESTIMONY CONCERNING EYEWITNESS CERTAINTY OF IDENTIFICATION IS ADMISSIBLE UNDER UTAH RULE OF EVIDENCE 403

¶ 24 Guzman also contends that testimony concerning an eyewitness's certainty of iden-

---

21. *Id.* ¶ 25.

22. *Id.* ¶ 26 (quoting *State v. Ramirez,* 817 P.2d 774, 778 (Utah 1991)).

23. *Id.* ¶ 27.

24. *Id.*

25. *Id.*

26. *Id.* ¶ 30.

27. *See* Gary L. Wells et al., *Eyewitness Identification Procedures: Recommendations for Lineups and Photospreads,* 22 Law & Hum. Behav. 603, 622 (1998).

tification is inadmissible under rule 403 of the Utah Rules of Evidence. We disagree.

¶ 25 Rule 403 precludes the admission of evidence where the probative value of the evidence "is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."[28] Therefore, absent an "unusual propensity to unfairly prejudice, inflame, or mislead the jury," proffered evidence is admissible under rule 403.[29] The court of appeals correctly noted that Guzman failed to cite any Utah cases supporting his argument that, under rule 403, certainty testimony "has an unusual propensity to unfairly prejudice, inflame, or mislead the jury."[30]

¶ 26 Furthermore, the court of appeals correctly relied on the trial judge's statement: "I think the jury would want to know how confident the witness was in their identification. They may choose to believe it. At least they are entitled to know how confident the witness is."[31] The court of appeals astutely noted that the defendant would agree with the trial judge's statement "if the thrust of the witness's testimony was that she was not very certain of her identification of Defendant or if she characterized the level of her certainty as only being a two or three on a scale of one to ten."[32] Most likely, Guzman contests the admissibility of this particular certainty evidence because it does not help him. However, evidence adverse to a defendant's argument is not necessarily too prejudicial to admit.

¶ 27 The critical question is whether certainty testimony is so prejudicial that the jury will be unable to fairly weigh the evidence. Our case law suggests that we have

confidence in our juries to appropriately weigh evidence that may be adverse to a defendant, particularly when instructed, as required by *Long*, of the potential problems with eyewitness identifications. Absent a substantial, not potential or minor, prejudicial effect, the certainty evidence is admissible for the jury's consideration in reviewing all other facts.

## CONCLUSION

¶ 28 The court of appeals correctly affirmed the trial court's admission of eyewitness certainty evidence in this case. The State did not violate Guzman's due process rights by admitting the testimony. And the testimony was not so prejudicial as to substantially outweigh its probative value.

We affirm.

¶ 29 Justice DURRANT, Justice PARRISH, and Justice NEHRING concur in Associate Chief Justice WILKINS' opinion.

DURHAM, Chief Justice, concurring:

¶ 30 I agree with the majority's holding that the admission of eyewitness certainty testimony does not violate the Due Process Clause of the Utah Constitution. However, I would add that, upon request, a defendant is entitled to a cautionary instruction summarizing the troublesome nature of certainty testimony and explaining that it is only one indicator of witness accuracy. Requiring this type of instruction addresses the potential dangers of certainty testimony, such as the risk that witness confidence may be influenced by intentional or inadvertent clues from law enforcement, may be conflated by positive feedback, or may be afforded too much weight by a jury.[1] *See* Gary L. Wells et al., *Eyewitness Identification Procedures:*

28. Utah R. Evid. 403.

29. *State v. Dunn*, 850 P.2d 1201, 1221 (Utah 1993).

30. *Id.*

31. *State v. Guzman*, 2004 UT App 211, ¶ 33 n. 10, 95 P.3d 302.

32. *Id.*

1. For example, one study suggests that where confidence testimony is given, jurors "overestimate the accuracy of identifications, fail to differentiate accurate from inaccurate eyewitnesses . . . and are generally insensitive to other factors that influence identification accuracy." Wells et al., *supra* ¶ 30, at 624; *see also* Penrod & Cutler, *supra* ¶ 30, at 831 (commenting "that jurors are largely insensitive to factors known to influence eyewitness performance but are (overly) sensitive to witness confidence").

*Recommendations for Lineups and Photospreads*, 22 Law & Hum. Behav. 603, 620–29 (1998). This instruction is also consistent with research suggesting that witness confidence is not necessarily an indicator of witness accuracy. *See id.* at 620–21, 626 (citing studies finding that confidence and accuracy were either not related or only somewhat related and concluding that, at best, confidence is "only modestly related to accuracy under pristine conditions"); Steven Penrod & Brian Cutler, *Witness Confidence and Witness Accuracy: Assessing Their Forensic Relation*, 1 Psychol. Pub. Pol'y & L. 817, 830 (1995) (noting that witness confidence "is a weak indicator of eyewitness accuracy even when measured at the time an identification is made and under relatively 'pristine' laboratory conditions" and is "highly malleable and influenced by postidentification factors" such as questioning, briefing, and feedback).

¶ 31 Moreover, I believe our reasoning in *State v. Long*, 721 P.2d 483 (Utah 1986), supports the addition of a cautionary instruction in cases with certainty evidence. In *Long*, this court recognized that there are "deep and generally unperceived flaws" in eyewitness identifications and held that additional instruction is necessary where jurors are likely to give great weight to eyewitness testimony. *Id.* at 492. While *Long* dealt exclusively with eyewitness identification, *see id.*, the policy this court expressed applies to certainty evidence because, like eyewitness identification, it is potentially unreliable [2] and there is evidence that jurors afford it great weight, *see* Wells et al., *supra* ¶ 30, at 620, 626. I therefore conclude that where certainty testimony is admitted, a cautionary instruction should be given where the defendant requests one.

---

2. In fact, in *Long* this court recognized that eyewitness testimony tends to appear "more accurate" as witnesses "wend their way through the criminal justice process." *Long*, 721 P.2d at 490 (citation and internal quotation marks omitted).